HOUSING AUTHORITY OF the COUN-
TY OF LEBANON, Plaintiff,

v.

ENVIROHOUSING, INC., et
al., Defendants.

Civ. No. 77–829.

United States District Court,
M. D. Pennsylvania.

Dec. 30, 1977.

As Amended Jan. 12, 1978.

Jeffrey A. Keiter, Lewis & Keiter, Palmyra, Pa., for plaintiff.

Paul J. Killion, Asst. U. S. Atty., Harrisburg, Pa., Eric S. Benderson, Chief Counsel for Special Litigation, Washington, D.C., for defendant Small Business Admin.

Richard L. Kearns, Caldwell, Clouser & Kearns, Harrisburg, Pa., for defendant Envirohousing, Inc.

Daniel Mungall, Jr., Philadelphia, Pa., for defendant Underwriters Adjusting Co. and Harold Bru.

## OPINION

MUIR, District Judge.

On September 7, 1977, the above-captioned case was removed to this Court from the Court of Common Pleas of Lebanon County, Pennsylvania by Defendant Small Business Administration, an agency of the United States Government, pursuant to 28 U.S.C. § 1442. On October 25, 1977, the Small Business Administration filed a motion to dismiss the complaint or in the alternative for summary judgment accompanied by a memorandum of law and an affidavit of Richard J. Koenig, a loan specialist in the Office of Community Development of the Small Business Administration. On November 17, 1977, the Court granted the motion because the Housing Authority had failed to file a responsive brief within 15 days of the date of the filing of the Small Business Administration's brief as required by ¶ 3.7 of Order # 2 of this Court in the above-captioned case dated September 8, 1977. On November 25, 1977, the Housing Authority filed a motion to vacate that order which was granted by this Court on November 30, 1977. The Housing Authority filed a brief in opposition to the Small Business Administration's motion on December 14, 1977. On December 21, 1977, the date on which an optional reply brief was due, the Small Business Administration filed a motion to extend the time for the filing of that brief for a period of ten days. That motion was denied by the Court on December 21, 1977 and no reply brief has been filed.

This action was originally instituted in the Court of Common Pleas of Lebanon County, Pennsylvania, on August 14, 1975 when the Housing Authority of the County of Lebanon filed a complaint against Envirohousing, Inc., a general contractor, Masonite Corporation, a supplier of materials, the Summit Insurance Company of New York, who acted as surety for Envirohousing, Harold Bru, the Underwriter's Adjusting Company, and Guy C. Read, Inc., agents or employees of the Summit Insurance Company, and the Small Business Administration, an agency of the United States

Government. In 1972, the Housing Authority contracted with Envirohousing for the construction of two housing projects in Lebanon County. A contract between the Housing Authority and Envirohousing specified that Envirohousing should furnish performance, payment, and maintenance bonds for all housing units which were to be constructed. Pursuant to that agreement, Envirohousing obtained such bonds from the Summit Insurance Company which, in turn, obtained a guarantee on its bonds from the Small Business Administration pursuant to 15 U.S.C. § 694b(a). The units were completed on or about July 1, 1973 and accepted by the Housing Authority. Thereafter, the Housing Authority noticed certain defects in workmanship and construction, and notified Envirohousing of those defects but no corrective action was taken. Notice was given to Summit Insurance Company, the surety, who also failed to repair the defects. Summit Insurance Company is now insolvent and its affairs are being managed by the Superintendent of Insurance of the State of New York. The Housing Authority seeks payment of the face amount of the bonds issued by Summit from the Small Business Administration. That agency, however, contends that the agreement entered into between it and Summit does not create a direct cause of action against the Small Business Administration by the Housing Authority and that the Small Business Administration should be dismissed from this suit.

■ The guarantee provisions of the Small Business Investment Act of 1958, as amended, 15 U.S.C. §§ 694a & 694b permit the Small Business Administration to enter into agreements to guarantee sureties against loss resulting from the breach of a performance bond by a principal on a contract if certain conditions are met. If a guarantee is entered into between a surety and the Small Business Administration, the S.B.A. is obligated to pay to the surety a sum not to exceed 90% of the loss incurred by the surety in fulfilling the terms of his contract. The purpose of the legislation was to facilitate the obtaining of construction contracts by small businesses which were unable to obtain performance bonds on reasonable terms without some kind of government guarantee. *See* 15 U.S.C. § 694b(a)(3). In this case, the Small Business Administration determined that Envirohousing, Inc. was such a small business and it entered into an agreement with Summit Insurance Company, a surety, to reimburse Summit for 90% of any sums which it might have to expend as a result of a breach of the construction contract by Envirohousing.

The Small Business Administration contends that the contract between itself and Summit Insurance Company was made primarily for the benefit of Summit and that the Small Business Administration's liability was predicated upon the payment by Summit of sums under its surety contract with Envirohousing so that no cause of action against the Small Business Administration had been created in favor of the Housing Authority, which does not stand in privity with the Small Business Administration. Therefore, it requests to be dismissed from the action. In response, the Housing Authority contends both that it is a third-party beneficiary of the contract between Summit and the Small Business Administration and that the Small Business Administration is estopped from denying liability to the Housing Authority because the Housing Authority relied upon the guarantee when it entered into its contract with Envirohousing.

■ As an initial matter, the Court must determine whether state or federal law is to be applied in resolving the issue of whether the Housing Authority is permitted to maintain a suit on the contract between Summit and the Small Business Administration. The Court believes that the rights and duties of the Small Business Administration in the performance of its surety obligations should be governed by federal rather than state law. The Small Business Administration derives its authority to guarantee surety contracts from federal law and such contracts may be entered into by the Small Business Administration in all

fifty states. Therefore, the use of federal common law rather than the law of each separate state would solve the problem of "making identical transactions subject to the vagaries of the laws of the several states." *Clearfield Trust Co. v. United States,* 318 U.S. 363, 367 [63 S.Ct. 573, 575, 87 L.Ed. 838] (1943).

■ Three other federal courts have recently considered the issue of whether the Small Business Administration is liable to a Plaintiff in the position of the Housing Authority. In *Six Fountains Apartments, Inc. v. Plus 5 Construction Corp.,* 433 F.Supp. 1284 (W.D.La.1977), the Court found that the guarantee of the S.B.A. to the surety had as its sole purpose the inducement of the surety to enter into a bond agreement when it would not otherwise do so. Consequently, no privity was established between a plaintiff in the position of the Housing Authority and the Small Business Administration and no third-party beneficiary rights were established. *See also Montgomery River Boat Comm'n., Inc. v. Balboa Insurance Co.,* No. 76–297–N (M.D. Ala. March 29, 1977); *United States v. KBJ Engineering, Inc.,* No. 75–1544–WBM (C.D. Cal. June 2, 1976). In addition, the Court in *Six Fountains* stated that the Small Business Administration had not waived the sovereign immunity of the United States with respect to a plaintiff in the position of the Housing Authority but that the waiver of sovereign immunity extended only to the surety. This Court is in agreement with the result reached in the *Six Fountains* case.

■ Although the Housing Authority argues that the Small Business Administration is in a position of a guarantor and not a reinsurer when it guarantees a surety bond under 15 U.S.C. § 694b it appears that traditional concepts of contract law which apply to contracts of reinsurance should apply to the Small Business Administration in this situation. A reinsurance contract involves the assumption of risks originally assumed by a surety by the reinsurer in return for a portion of the premiums. *Security Mutual Casualty Company v. Centu-*

*ry Casualty Co.,* 531 F.2d 974, 977 (10th Cir. 1976). Such a reinsurance contract operates solely between the reinsurer and the reinsured, creating no cause of action in favor of the original insured party against the reinsurer. *Safeway Trails, Inc. v. Stuyvesant Insurance Co.,* 211 F.Supp. 227 (M.D. N.C.1962); *see also American Cast Iron Pipe Co. v. Statesman Insurance Co.,* 343 F.Supp. 860 (D.Minn.1972). The theory behind precluding the original insured party from suing the reinsured directly is that such a party usually has no knowledge of the reinsurance contract and cannot claim that it relied upon such a contract in entering into a separate obligation with a party whose performance has been insured and that the reinsurer has obligated itself to pay only when the original insurer expends sums to the insured party. *See United States v. Federal Surety Co.,* 72 F.2d 964 (4th Cir. 1934).

■ The Housing Authority contends, however, that such reliance is present in this case because it was aware of the participation of the Small Business Administration as a guarantor of Summit's surety bond before it entered into its contract with Envirohousing. The Court does not believe that such knowledge alters the result in this case. The contract entered into between the Small Business Administration and Summit states only that should Summit be obligated to make payments pursuant to the terms of its surety bond, it would be reimbursed for 90% of those payments by the Small Business Administration. The contract makes no reference to any payments which would go directly from the Small Business Administration to any party but Summit. The purpose of the contract was to enable Envirohousing to post a performance bond when without the Small Business Administration's guarantee it would have been unable to do so. The Housing Authority's claim that it relied upon such an agreement in entering into its contract with Envirohousing overlooks one important fact, namely that Summit would become insolvent following the Housing Authority's entry into its agreement with

Envirohousing. In effect, the Housing Authority is asking this Court to extend whatever reliance the Housing Authority placed in the Small Business Administration's guarantee to the situation where the surety becomes insolvent and is unable to meet its obligations under the surety bond. If the Housing Authority did so rely when it entered into its contract with Envirohousing, the Court concludes that such reliance was unjustified based upon the actual terms of the agreement between the Small Business Administration and Summit so that to carve out an exception to the general rule concerning reinsurers on the basis of such reliance is not warranted. Otherwise, the Housing Authority would be placed in a better position than a party who contracted with a business concern not eligible for an S.B.A. guarantee which obtained a surety bond from an insurer who later became insolvent. The Court believes that in either situation a party in the Housing Authority's position bears the risk of the surety's insolvency.

Were the Court to accept the Housing Authority's contention that the Small Business Administration stands in the position of a guarantor rather than a reinsurer, no different result would be reached. First, as the Housing Authority itself points out, the other three district courts which have considered this problem, without placing emphasis on the distinction between a reinsurer and a guarantor, stated that as a guarantor, the Small Business Administration was not liable to a Plaintiff in the Housing Authority's position. Further, the Housing Authority's citation of the case of *Reconstruction Finance Corp. v. Bairstow*, 140 F.2d 353 (7th Cir. 1944) is inapposite because the guaranty contract construed by the Court in that case stated that the guarantee should run to all the holders of the bonds which were guaranteed. No such statement is contained in the contract before the Court in this case.

■ The Housing Authority also contends that the Small Business Administration is estopped by virtue of its representation to Guy C. Read, an agent for Summit, that it would guarantee all bonds entered into by Summit. Because the Court has held that any reliance on the part of the Housing Authority that the Small Business Administration would pay the surety bonds should Summit become insolvent is unjustified, such an estoppel cannot be worked by the facts of this case. Moreover, to allow a Plaintiff in the position of the Housing Authority to succeed on an estoppel theory based upon the same set of facts which do not permit it to maintain a direct suit on the contract between the Small Business Administration and Summit on the basis of reliance is simply to circumvent the sound reasoning behind the prohibition of such a suit. Finally, as stated by the Court in *Six Fountains Apartments, Inc. v. Plus 5 Construction Corp.*, 433 F.Supp. 1284, 1286 (W.D.La.1977), it is unlikely that the Small Business Administration intended to waive its sovereign immunity in favor of a Plaintiff in the position of the Housing Authority. To the extent that any of the Small Business Administration's agents made representations which would work an estoppel against the Small Business Administration and preclude it from asserting its sovereign immunity, such representations were outside the scope of the agent's authority and prevent estoppel from being asserted against the United States. *See In re Hooper's Estate*, 359 F.2d 569, 577 (3d Cir.) *cert. denied*, 385 U.S. 903, 87 S.Ct. 206, 17 L.Ed.2d 133 (1966); *United States v. 35.30 Acres of Land in Montour County, Pennsylvania*, No. 77–688 (M.D.Pa. November 8, 1977). Therefore, the Housing Authority cannot succeed on an estoppel theory.

■ Because the Court will grant the Small Business Administration's motion to dismiss it from this case, and because many of the Defendants are Pennsylvania residents or organizations so that no jurisdiction would have existed had the action originally been filed in this Court, the case will be remanded to the Court of Common Pleas of Lebanon County, Pennsylvania. *See Herman Andrae Electrical Co. v. Freiberg*, 332 F.Supp. 858, 859 (E.D.Wis.1971); *Pennsylvania Turnpike Comm'n. v. McGinnes*, 179 F.Supp. 578, 583 (E.D.Pa.1959).